UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL CHAVEZ,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

No. 2:18-cv-1079-EFB

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 13 & 18. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I. Background

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since September 15, 2012. Administrative Record ("AR") at 47, 132-38. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 71-75, 77-83. A hearing was subsequently held before administrative law judge ("ALJ") David M. Blume. *Id.* at 35-46.

Plaintiff was represented by counsel at the hearing, at which he and a vocational expert testified. *Id*.

Plaintiff also filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act. AR 25. He was ultimately found disabled and entitled to SSI benefits as of November 2016 based on that application. However, the ALJ declined to join that application with plaintiff's DIB application because it was not filed until November 29, 2016 and, consequently, was not limited to whether plaintiff was disabled prior to September 30, 2014, plaintiff's last date insured. *See* 20 C.F.R. § 404.131 (to be eligible for DIB, a claimant must establish disability prior to the date last insured); 20 C.F.R. § 416.202 (establishing financial requirements for SSI eligibility instead of an insured period); 20 C.F.R. § 416.501 (payment of SSI benefits are not "made for any period that precedes the first month following the date on which an application is filed . . . ."). On remand for an initial determination, plaintiff was found to be disabled and entitled to SSI benefits as of November 2016. ECF No. 13-1. The question at issue now is whether plaintiff became disabled prior to on or before September 30, 2014, the date plaintiff last met the insured status requirement for DIB.

On March 2, 2017, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 25-31. The ALJ made the following specific

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically

findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2. The claimant has not engaged in substantial gainful activity since September 15, 2012, the alleged onset date.

\* \* \*

3. Through the date last insured the claimant had the following medically determinable impairments: osteoarthritis right ankle and left knee; hypertension; and asthma.

\* \* \*

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments.

\* \* \*

5. Alternatively, the claimant could do other work.

\* \* \*

6. The claimant was not under a disability, as defined in the Social Security Act, from September 15, 2012, through the date last insured.

*Id.* at 27-30 (citations omitted).

Plaintiff's request for Appeals Council review was denied on March 6, 2018, leaving the ALJ's decision as the Commissioner's final decision. *Id*. at 1-6.

/////

---

determined disabled. If not, proceed to step four.
　　Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
　　Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3

II. Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. Analysis

Plaintiff contends that the ALJ committed three errors in finding that he was not disabled at step-two of the sequential evaluation process. First, plaintiff argues that the ALJ ignored medical evidence showing that his knee and ankle impairments were severe. Second, he contends that the ALJ improperly rejected medical opinion evidence without providing legally sufficient reasons. Third, plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his testimony. Lastly, plaintiff contends that the ALJ's alternative step-five finding should be disregarded because the ALJ failed to follow the five-step sequential evaluation process and did not properly assess his residual functional capacity ("RFC"). ECF No. 13 at 5-10.

/////

/////

### A. Step-Two of the Sequential Evaluation

#### 1. Relevant Legal Standards

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At step-two the claimant has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p).

When the ALJ determines that a claimant has at least one severe impairment, he must consider all impairments, including non-severe impairments, at all subsequent steps of the sequential evaluation. *Smolen*, 80 F.3d at 1290.

#### 2. Discussion

At the second step of the sequential evaluation, the ALJ found that plaintiff's medically determinable impairments included osteoarthritis of the right ankle and left knee, but he concluded that these impairments were not severe.[2] AR 28. As discussed below, the ALJ's finding is not supported by substantial evidence.

Plaintiff's treatment notes indicate that plaintiff has a history of trauma to his right ankle after he fell from a scaffold 30 years earlier. AR 408. In August 2014, plaintiff complained of swelling and pain in his right ankle, which made it difficult to walk. *Id*. Examination showed

---

[2] The ALJ also found that plaintiff's hypertension and asthma were non-severe impairments, but plaintiff does not challenge that finding.

extensive deformities in the right ankle joint with swelling. *Id*. at 410. Plaintiff's left knee was also noted to be abnormal. *Id*. Subsequent imaging showed extensive degenerative joint disease of the right ankle. *Id*. at 410, 420. At that time, plaintiff was diagnosed with osteoarthritis of the right ankle and left knee joint pain and was instructed to take Motrin. *Id*. at 408-10.

The ALJ discussed these records but concluded that they failed to establish a severe impairment because plaintiff was treated conservatively with over-the-counter medication.[3] *Id*. at 29. While conservative care may weigh against a finding of disability, it is not sufficient to establish that an impairment is non-severe at step two of the sequential evaluation. *Cowains v. Astrue*, 2012 WL 3779076, at *4 (C.D. Cal. Aug. 30, 2012) (finding conservative treatment with medication regimen is not a sufficient reason to find an impairment non-severe). This is especially true given that objective medical evidence reflected extensive deformities in plaintiff's right ankle, resulting in pain and difficulty with ambulation. *See* AR 408-10, 420.

More troubling is the ALJ's wholesale rejection of the medical opinion evidence. The record contains opinions from three physicians. In December 2016, Dr. Garth Davis, one of plaintiff's treating physicians, completed a treating source statement assessing plaintiff's functional limitations. AR 1056-59. Therein, Dr. Davis opined that plaintiff could occasionally lift 20 pounds while sitting; sit for eight hours in an eight-hour workday; stand and walk for one hour each in an eight-hour workday; frequently reach, handle, and finger; and never climb, balance, stoop, kneel, crouch, or crawl. *Id*. at 1057-59. He further opined that plaintiff required a cane or walker, and that his impairments would interfere with attention and concentration more than 25 percent of the time during an eight-hour workday and cause plaintiff to be absent more than four days per month. *Id*. at 1056. In support of his opinion, Dr. Davis stated that plaintiff

---

[3] The ALJ also concluded that plaintiff's conservative care included instructions to perform home stretching exercises. AR 29. That finding is not supported by the record. The last few pages of plaintiff's treatment notes included general information concerning a variety of exercises that could be performed by individuals diagnosed with foot arthritis. *Id*. at 415-417. These examples are prefaced by the statement that a "doctor or physical therapist will tell you when you can start these exercises and which ones will work best for you." *Id*. at 415. But there nothing in the record reflecting that plaintiff's physician instructed plaintiff to perform any of the exercises.

6

had end stage degenerative post trauma arthritis, that his left knee and right ankle joints were completely destroyed, and that plaintiff could barely stand. *Id*. at 1056-59. He also added that he and plaintiff were discussing below the knee amputation. *Id*. at 1057.

Non-examining physician Dr. S. Amon reviewed plaintiff's medical records and opined that plaintiff was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking about six hours in an eight-hour workday; sitting about six hours in an eight-hour workday; occasionally kneeling, crawling and climbing ramps, stairs, ladders, ropes, and scaffolds; and frequently balancing, steeping, and crouching. AR 52. Non-examining physician G. Williams also reviewed plaintiff's treatment records and agreed with Dr. Amon's opinion. *Id*. 62-63.

The ALJ rejected all of these medical opinions. *Id*. at 29-30. With respect to Dr. Davis, the ALJ provided the following explanation:

> Dr. Davis only examined the claimant one time, in September 2016. In addition, he only started treating the claimant in 2016, which indicates little basis for an opinion of the claimant's conditions during the relevant period on and before September 30, 2014. Further, Dr. Davis's opinion is inconsistent with evidence indicating that the claimant was working as a plasterer during 2014 and 2015.

*Id*.

The ALJ's reasons do not justify the outright rejection of Dr. Davis's opinion, much less a finding that plaintiff's impairments have no more than a minimal effect on his ability to work. First, contrary to the ALJ's findings, Dr. Davis stated that he had seen plaintiff on two occasions and had two additional telephone appointments. But even if the court were to accept that misstatement of the record, a medical opinion may not be rejected solely because the physician had only evaluated the claimant on one occasion. To hold otherwise would render every opinion from examining physicians meaningless. *See Brown v. Berryhill*, 2018 WL 4700348, at *17 (N.D. Cal. Sept. 29, 2018) ("Discounting Dr. Thomsen's findings because they are based on a one-time evaluation is legally erroneous because the ALJ's rationale would render all examining opinions superfluous, and is contrary to the requirement that the ALJ consider all relevant evidence, including medical opinions of examining doctors.") (citations and quotations omitted);

7

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Nor does the fact that Dr. Davis rendered his opinion two years after plaintiff's date last insured justify the rejection of his opinion. Dr. Davis specifically stated that, to the best of his knowledge, the assessed limitations first appeared "years ago." AR 1056. More significantly, the assessed limitations were based on plaintiff's knee and ankle impairments—impairments that existed prior to the date last insured—and the ALJ did not find that these impairments had significantly worsened after the date last insured. *Id*. at 408-10, 1057-59.; *see Lester*, 81 F.3d at 832 (holding that ALJ erred in rejecting physician's opinion rendered after the date last insured because "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.").

Arguably, the ALJ's final reason for rejecting Dr. Davis's opinion—that it was contradicted by evidence that plaintiff worked as a plasterer during 2014 and 2015—was legally sufficient. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2011) (a treating physician's opinion may be rejected where the "restrictions appear to be inconsistent with the [claimant's] level of activity."). Plaintiff's medical records reflect that he, at least occasionally, continued to work as a plasterer.[4] AR 174 (plaintiff reported he stopped working in March 2014); 227 (August 2014 treatment note stating plaintiff "still working doing plaster and does work with painting cars."); 289 (December 2014 treatment record stating plaintiff reported he is self-employed and "plastered with his right arm all day long today"); 303 (January 2015 treatment record reflecting plaintiff is working); 925-26 (May 2016 treatment note reflecting plaintiff was no longer able to work as a plasterer).

/////

/////

---

[4] Despite such evidence, the ALJ specifically found that plaintiff had not engaged in substantial gainful activity since September 15, 2012. AR 27.

8

The record, however, does not reflect how often plaintiff performed such work, nor does it contain any information as to the exertional demands he employed in performing such work. And despite the ALJ's heavy reliance on this evidence[5], he made no attempt to develop the record regarding plaintiff's work as a plasterer. Indeed, at the administrative hearing the ALJ only inquired as to when plaintiff ceased performing such work. AR 37-45. Thus, the ALJ improperly relied on plaintiff's ability to perform plastering activities to reject Dr. Davis's opinion. *See Trevizo*, 871 F.3d at 676 ("Though the ALJ repeatedly pointed to Trevizo's responsibilities caring for her young adoptive children as a reason for rejecting her disability claim, the record provides no details as to what Trevizo's regular childcare activities involved. The ALJ did not develop a record regarding the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them, or did any other tasks . . . . Absent specific details about Trevizo's childcare responsibilities, those tasks cannot constitute 'substantial evidence' inconsistent with Dr. Galhotra's informed opinion, and thus the ALJ improperly relied on Trevizo's childcare activities to reject the treating physician opinion.").

The ALJ also rejected Dr. Williams and Dr. Amon's opinions—the only other medical opinions in the record—because they were contradicted by plaintiff's "activity as a plasterer in 2014 and 2015." AR 30. The ALJ's reliance on this basis for rejecting these opinions is particularly dubious given that both physicians reviewed plaintiff's treatment records through May 2015, which included nearly all the references to plaintiff performing plastering work. *Id*. at 48-50, 58-60.

Further, the ALJ's reliance on references to plaintiff's past work activity as a plasterer also manifests a fundamental misunderstanding of the sequential analysis under the regulations. The ALJ made the curious assumption that an ability to do work activity is inconsistent with having a severe impairment. It is a common occurrence in Social Security disability cases that an

---

[5] With respect to the finding that plaintiff's ankle and knee impairments were non-severe, the ALJ's decision can be fairly characterized as resting almost exclusively on the medical records' sporadic references to plaintiff's ongoing work as a plasterer. Those references provided the sole basis for the ALJ's rejection of the non-examining physicians' opinions and plaintiff's testimony.

ALJ will find a claimant to have a variety of severe impairments but still maintain the RFC to do either past relevant, or other work. Thus, even assuming plaintiff maintained the ability to perform his past relevant work as a plasterer, that fact would not demand a finding of no severe impairments.

Accordingly, the ALJ's step-two findings is not supported by substantial evidence.[6]

### B. Alternative Step-Five Findings

After concluding that the plaintiff was not disabled at step-two of the sequential evaluation, the ALJ made an alternative finding that the plaintiff retained the ability to perform other work. AR 30. In making this finding, the ALJ explained that "[e]ven if [plaintiff had severe impairments], he would have been able to perform less than a full range of light work, with occasional postural activities and but [sic] no ladders, scaffolds, or hazards. The State agency doctors' opinions support this alternative finding." *Id*. The ALJ further noted that the vocational expert testified that an that there were a significant number of jobs that could be performed by an individual with such limitations. *Id*.

The ALJ's conclusion is problematic for multiple reasons. As a threshold matter, the finding is based exclusively on the non-examining physicians' opinions, which the ALJ expressly rejected. But more significantly, the ALJ reached his step-five finding without properly assessing plaintiff's residual functional capacity.

In between the third and fourth step of the sequential evaluation, the ALJ must assess the claimant's RFC. 20 C.F.R. 404.1520(a)(4). The RFC is the maximum a claimant can perform despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ is required to consider all relevant evidence, including plaintiff's testimony and opinions from medical sources. SSR 96-8p; *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *see also Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain,

---

[6] The court declines to address plaintiff's argument that the ALJ erred in rejecting his testimony. Regardless of whether he did, the ALJ's step-two finding remains unsupported.

10

that are reasonably attributed to a medically determinable impairment.") (internal quotations omitted). Aside from the fact that the ALJ bypassed step three and four of the sequential evaluation, the ALJ's step-five finding was based solely on the opinions of the non-examining physicians. Setting aside the fact that the ALJ rejected such evidence, the ALJ was required to assess plaintiff's RFC based on all relevant evidence. Because the ALJ's alternative step-five finding was not based solely two rejected medical opinions, there is no basis for finding that his error at step-two was harmless.

Accordingly, the matter must be remanded for further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

IV. Conclusion

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is denied;
3. The matter is remanded for further proceedings consistent with this order; and
4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

DATED: September 30, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE